IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

FOREMAN ELECTRIC
SERVICES, INC.                                                                                    PLAINTIFF

v.                                          Case No. 4:19-cv-4157

HALIRON POWER, LLC                                                              DEFENDANT

## ORDER

Before the Court is Plaintiff Foreman Electric Services, Inc.'s Motion to Transfer.  (ECF

No. 52).  Defendant Hailron Power, LLC has responded.  (ECF No. 55).  Plaintiff has replied.

(ECF No. 58).  The Court finds the matter ripe for consideration.

## I.  BACKGROUND

This unusual case arises in the wake of devastating power-grid damage caused by two

hurricanes in Fall 2017, when the United States Army Corps of Engineers awarded Fluor Daniel

Caribbean, Inc. ("Fluor")[1] government construction contracts to perform electric utility repair in

Puerto Rico.  On January 8, 2018, Fluor hired Defendant to serve as a first-tier subcontractor on

the project, pursuant to the terms of a written contract between the two entities (the "Prime

Contract").  On January 11, 2018, Defendant hired Plaintiff to serve as a second-tier subcontractor

on the project, pursuant to the terms of a separate written contract between the two entities (the

"Subcontract").

The Prime Contract between Fluor and Defendant contains a forum-selection clause

providing as follows:

> This Contract shall be exclusively governed by and construed in accordance with
> the laws of the State of South Carolina, exclusive of the State of South Carolina's
> choice of law rules.  Any claims or proceedings brought with respect to any dispute

---

[1] Fluor is not a party to this case.

> arising from the Contract shall be brought exclusively in the State or Federal Courts
> located in the County of Greenville, South Carolina, unless expressly designated
> otherwise within this Contract.  The parties irrevocably agree to submit to the
> personal jurisdiction of the courts located within the County of Greenville, South
> Carolina for litigating all such claims or disputes.

(ECF No. 42-1, p. 66).   The Prime Contract also sets out in detail various standards and

requirements for the work to be performed by Defendant on the project.[2]  *Id.* at 33-80.

The separate Subcontract between Plaintiff and Defendant contains a few provisions that

warrant mention.  Section 1.1 of the Subcontract, governing the "scope of work," provides:

> The agreement between [Flour] and [Defendant] (the "Prime Contract") . . . and all
> general, special, and supplemental conditions . . . referred to in, and made part of,
> the Prime Contract; all addenda and modifications to the Prime Contract; and all
> other documents forming a part of the Prime Contract (collectively, the "Contract
> Documents") are incorporated into this Agreement to the extent they apply to the
> work of [Plaintiff].

(ECF No. 42-2, p. 1).  The Subcontract also provides "any dispute arising between [Defendant]

and [Plaintiff] shall be addressed using the same procedures outlined in the Contract Documents."

*Id.* at 12.   The Subcontract provides further that it "shall be governed by the law in effect in

Arkansas," *id.*, and that "[i]n the event of conflicts or inconsistencies between provisions of this

Agreement and the Contract Documents, the provision imposing the higher quality, greater quality,

or greater duty or obligation on [Plaintiff] governs."  *Id.* at 1.

On September 14, 2018, Defendant sued Fluor in South Carolina state court, alleging that

Fluor breached the Prime Contract, *inter alia*, by failing to pay Defendant for invoiced work done

on the project.  That case was removed to federal court and remains pending before Judge Timothy

Crain in the United States District Court for the District of South Carolina.  *See Haliron Power,*

---

[2] The Prime Contract is eighty pages long and does not need to be fully recounted for purposes of this order.  Suffice
it to say that, among other things, the Prime Contract includes provisions regarding work-quality standards, the timing
of work, the materials and equipment used, labor and work rules, indemnification and insurance requirements, rules
governing work conditions, and procedures for handling any conflicts and disputes that might arise between Defendant
and Fluor.

*LLC v. Fluor Daniel Caribbean, Inc.*, No. 6:18-cv-2911-TMC.

On February 20, 2019, Plaintiff filed this case against Defendant in Texas state court, alleging that Defendant breached the Subcontract by failing to pay $7,979,670.16 for invoiced work that Plaintiff performed on the project. On March 25, 2019, this case was removed to the United States District Court for the Western District of Texas. On December 16, 2019, this case was transferred to this Court upon the parties' agreed motion. On April 10, 2020, Defendant filed a motion seeking leave to file an amended answer that asserted counterclaims against Plaintiff.

On April 21, 2020, Plaintiff filed a separate lawsuit against Fluor in the United States District Court for the District of South Carolina, seeking, *inter alia*, $7,979,670.16 that was allegedly paid by Fluor to Defendant and then not paid by Defendant to Plaintiff for work done on the Puerto Rico project. That case also remains pending before Judge Crain. *See Foreman Elec. Servs., Inc. v. Fluor Daniel Caribbean Inc.*, No. 6:20-cv-1528-TMC.

On April 28, 2020, the Court granted Defendant's motion for leave to file an amended answer in this case. That same day, Defendant filed its amended answer, which contains its counterclaims against Plaintiff. In short, Defendant counterclaims that Plaintiff breached the Prime Contract and the Subcontract in various ways, including its employees' failure to protect materials and equipment, failure to work in accordance with rules and regulations, engagement in recreational drug use, failure to work in a safe and reasonable manner, failure to produce certified payroll and proper invoices, and failure to reduce personnel size and demobilize equipment when ordered. Defendant contends that Plaintiff's conduct caused Fluor to prematurely remove Defendant from the project, costing it millions of dollars and reputational damage.

On June 4, 2020, Plaintiff filed the instant motion, arguing that the Court should transfer all claims asserted in this case to the District of South Carolina, where they will presumably be presided over by Judge Cain. Defendant opposes the motion.

## II.  DISCUSSION

Plaintiff argues that the Court must transfer Defendant's counterclaims to the District of South Carolina pursuant to 28 U.S.C. § 1404(a) and the Prime Contract's forum-selection clause. Plaintiff also asks for the transfer of its claims to the District of South Carolina pursuant to section 1404(a) for the convenience of parties and witnesses, and in the interest of justice.  Defendant argues as a preliminary matter that the claims in this case should not be transferred because Plaintiff has waived the defense of improper venue.  Defendant argues alternatively that the claims should not be transferred under section 1404(a).

As a threshold matter, the Court will address Defendant's argument that Plaintiff has waived its defense of improper venue by not seasonably asserting it.  If necessary, the Court will then decide whether the claims in this case should be transferred to South Carolina.

### A. Waiver of Venue

Defendant argues that Plaintiff has waived its defense of improper venue by not seasonably asserting it.  Plaintiff has not sought leave to file a reply addressing this argument.  For the reasons that follow, the Court need not determine whether Plaintiff has waived its defense of improper venue because, even if so, that does not prevent Plaintiff from moving for a transfer of venue pursuant to 28 U.S.C. § 1404(a).

The defense of improper "venue, like jurisdiction over the person, may be waived.  A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it."  *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).  Ordinarily, the defense of improper venue is waived if it is not raised in a Rule 12(b)(3) motion to dismiss, in the party's first responsive pleading, or the first amended responsive pleading allowed as a matter of course.  Fed. R. Civ. P. 12(h)(1).

However, "a motion to transfer the case pursuant to 28 U.S.C. § 1404(a) is not an objection

4

to improper venue, which under Federal Rule of Civil Procedure 12(b) would be required to be made before answer." *Wilson v. United States*, No. 4:05-cv-0562, 2006 WL 3431895-GTE, at *2 (E.D. Ark. Nov. 28, 2006); *see also Red Wing Shoe Co. v. B-JAYS USA, Inc.*, No. CIV. 02-257DWFAJB, 2002 WL 1398538, at *2 (D. Minn. June 26, 2002); 14D Arthur R. Miller, *Federal Practice & Procedure: Jurisdiction* § 3829 (4th ed. 2020) ("[A] defendant who has waived a venue objection has not necessarily waived the right to seek a transfer of venue under 28 U.S.C.A. § 1404(a)."). Unlike a Rule 12(b)(3) motion to dismiss for improper venue, "a motion to transfer under § 1404(a) can be filed at any time, so long as the motion is made with reasonable promptness." *Brown v. Federated Capital Corp.*, 991 F. Supp. 2d 857, 860 (S.D. Tex. 2014).

Importantly, Plaintiff does not move for dismissal under Rule 12(b)(3) on the ground that the Western District of Arkansas is an improper venue. Rather, both of Plaintiff's requests for venue transfer are made under 28 U.S.C. § 1404(a). Thus, even if Plaintiff waived its defense of improper venue, it may still move for transfer under section 1404(a). *Id.*; *Wilson*, 2006 WL 3431895-GTE, at *2. Defendant filed its counterclaims on April 29, 2020, and Plaintiff moved for transfer of venue based on those newly raised counterclaims on June 4, 2020. The Court finds that the instant motion is seasonably asserted, and thus, the Court will now proceed to the merits of the motion.

### B. Venue Transfer

Plaintiff asks the Court to transfer Defendant's counterclaims to the District of South Carolina pursuant to 28 U.S.C. § 1404(a) and the Prime Contract's forum-selection clause. Plaintiff also asks for the transfer of its own claims under 28 U.S.C. § 1404(a). Defendant opposes both requests.

The Court must begin by determining whether the Western District of Arkansas is a proper venue for this case. This is because "[s]ection 1404(a) applies only if the initial federal forum is a

proper venue."  14D Arthur R. Miller, *Federal Practice & Procedure: Jurisdiction* § 3829 (4th ed. 2020).  "Where no special venue statute is applicable, the general venue statute, 28 U.S.C. § 1391, applies."  *Catholic Order of Foresters v. U.S. Bancorp Piper Jaffray, Inc.*, 337 F. Supp. 2d 1148, 1154 (N.D. Iowa 2004).  Under that statute, a civil action founded on diversity of citizenship, like this case, may ordinarily be brought only in:  (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events occurred or a substantial part of the property at issue is situated; or, if there is no district in under which an action may otherwise be brought under the venue statute, (3) any judicial district in which any defendant is subject to personal jurisdiction.  28 U.S.C. § 1391(b).

Defendant states that the Western District of Arkansas is a proper venue because it is the judicial district where Defendant and its owners reside and, moreover, it is the venue the parties consented to earlier in this case.  Plaintiff's motion does not discuss whether the Western District of Arkansas is a proper venue, but the Court presumes that Plaintiff believes that venue is proper in this district because Plaintiff is moving for transfer of venue under 28 U.S.C.§ 1404(a), which allows for the transfer of a case from one proper venue to another proper venue.[3]  Accordingly, the Court finds that the Western District of Arkansas is a proper venue for this case.

Because Plaintiff contends that Defendant's counterclaims are subject to a mandatory forum-selection clause, the Court will begin by addressing those claims. The Court will then determine whether Plaintiff's claims should be transferred.

### 1. Forum-Selection Clause

Defendant's counterclaims allege that Plaintiff breached both the Prime Contract and the Subcontract.  Plaintiff contends that Defendant's counterclaims must be transferred to South

---

[3] If Plaintiff believed the Western District of Arkansas was an improper venue, it would have filed a motion for transfer under 28 U.S.C. § 1406(a), which allows the transfer of a case from an improper venue to a proper venue.

Carolina because the counterclaims implicate the Prime Contract, which contains a mandatory forum-selection clause that selects South Carolina as the exclusive venue for any disputes arising from that contract.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In analyzing a motion to transfer under section 1404(a), the Court ordinarily employs a three-factor balancing test, considering: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l., Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).  The Eighth Circuit has approved the consideration of "all relevant factors" in making a "case-by-case evaluation of the particular circumstances at hand." *Id.*  Ultimately, the Court enjoys "much discretion" when deciding whether to grant such a motion.  *Id.* at 697.

The Court's analysis of a motion to transfer changes when the parties have entered into a valid forum-selection clause, which "[should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).  When there is a valid forum-selection clause, the section 1404(a) analysis is altered in three ways:  (1) the plaintiff's choice of forum holds no weight and the plaintiff consequently bears the burden of establishing that a transfer pursuant to the forum-selection clause is unwarranted; (2) the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum," and consider only the public-interest factors, which defeat a forum-selection clause only in "unusual cases"; and (3) a transfer will not carry with it the original forum's choice-of-law rules, which could affect public-interest considerations.  *Id.*

Defendant does not argue that the Prime Contract's forum-selection clause is invalid or that it is permissive.  However, Defendant contends that Plaintiff, who is not a party to the Prime

Contract, cannot enforce that contract's forum-selection clause as to Defendant's counterclaims because the counterclaims arise only from the Subcontract, which does not contain a forum-selection clause of its own and does not explicitly incorporate the Prime Contract's forum-selection clause.

It is undisputed that the Subcontract contains no forum-selection clause.  It also appears undisputed that the Subcontract does not incorporate the Prime Contract's forum-selection clause. The question before the Court becomes whether the Prime Contract's forum-selection clause encompasses Defendant's counterclaim against Plaintiff for breach of that contract.[4]

For reference, the Prime Contract between Fluor and Defendant contains a forum-selection clause providing as follows:

> This Contract shall be exclusively governed by and construed in accordance with the laws of the State of South Carolina, exclusive of the State of South Carolina's choice of law rules.  Any claims or proceedings brought with respect to any dispute arising from the Contract shall be brought exclusively in the State or Federal Courts located in the County of Greenville, South Carolina, unless expressly designated otherwise within this Contract.  The parties irrevocably agree to submit to the personal jurisdiction of the courts located within the County of Greenville, South Carolina for litigating all such claims or disputes.

(ECF No. 42-1, p. 66).  The Court is unpersuaded that Defendant's breach-of-the-Prime-Contract counterclaim falls within the scope of this clause.  After all, Plaintiff is not a party to the Prime Contract, and nothing indicates that Plaintiff was an intended third-party beneficiary of the contract.

---

[4] "The Eighth Circuit has not definitively ruled on whether state or federal law controls when the applicability of a forum selection clause is at issue."  *Kleiman v. Kings Point Capital Mgmt., LLC*, No. 4:17-cv-2278-HEA, 2018 WL 3328012, at *3 (E.D. Mo. July 6, 2018).  The parties do not discuss whether state or federal law should be applied to determine the applicability of the Prime Contract's forum-selection clause to this case.  However, both parties cite almost exclusively to federal caselaw in their briefs.  Thus, the Court will apply federal law to decide that issue.  *See Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 971 (8th Cir. 2012) (finding no error in the use of federal law to determine the applicability of a forum-selection clause when the parties did not argue for the use of state law instead); *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) ("[A] federal court interpreting a forum selection clause must apply federal law in doing so."); *see also Rainforest Café, Inc. v. EklecCo, LLC*, 340 F.3d 544, 546 (8th Cir. 2003) ("Because the parties have not argued that state law would result in a materially different outcome, we indulge their suggestion that we interpret the forum selection clause under federal law.").

A non-signatory to a contract containing a forum-selection clause can be bound by the clause where the non-party is so "closely related" to the dispute that it becomes foreseeable that it will be bound by that clause.  *Marano Entrs. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).  "What it means to be 'closely related,' or 'foreseeable' is not self-evident."  *U.S., ex rel. Lighting & Power Servs., Inc. v. Interface Const. Corp.*, No. 4:07 CV 1144 DDN, 2007 WL 2710030, at *6 (E.D. Mo. Sept. 11, 2007), *report and recommendation adopted sub nom. United States for use of Lighting & Power Servs., Inc. v. Interface Constr. Corp.*, No. 4:07CV1144 ERW, 2007 WL 9725001 (E.D. Mo. Nov. 20, 2007), *aff'd sub nom. U.S. for use of Lighting & Power Servs., Inc. v. Interface Const. Corp.*, 553 F.3d 1150 (8th Cir. 2009).  "Cases applying the closely related test have almost exclusively involved suits brought by plaintiffs who are bound by a clearly common interest— such as a corporation and its subsidiary, spouses, and closely affiliated companies."  *Id.*; *see also Marano*, 254 F.3d at 757 (holding that a co-plaintiff was closely related to the dispute—and therefore bound by a forum-selection clause in a contract that he was not a signatory to—because he was "a shareholder, officer, and director" of the contracting party and voluntarily joined that party in bringing suit under the agreements).

Plaintiff does not explicitly argue that it is so closely related to either Defendant or Flour that it was foreseeable that Plaintiff would be bound by the forum-selection clause.   Instead, Plaintiff argues, without citing to supporting authority, that the Prime Contract's forum-selection clause covers "any claims or disputes . . . arising from the [Prime] Contract," and because Defendant's counterclaims implicate the Prime Contract, those claims necessarily fall within the scope of the Prime Contract's forum-selection clause.  This is akin to an equitable estoppel argument, that Defendant cannot sue Plaintiff under the Prime Contract while simultaneously avoiding the burden of its forum-selection clause.  Defendant largely ignores this argument,

asserting that it and Plaintiff are parties to the Subcontract, which contains no forum-selection clause and did not incorporate the Prime Contract's forum-selection clause.

The parties do not cite, and the Court is unaware of, any on-point authority squarely mirroring the unusual facts underlying the present dispute. To aid in its analysis of the issue, the Court looks partly to decisions regarding arbitration agreements because the Supreme Court has characterized an arbitration clause as "a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

South Carolina law carries a presumption that an individual who is not a party to a contract lacks privity to enforce it.[5] *See Touchberry v. City of Florence*, 295 S.C. 47, 48-49, 367 S.E.2d 149, 150 (1988). However, South Carolina has recognized several theories that could bind non-signatories to arbitration agreements under general principles of contract and agency law, including estoppel. *Wilson v. Willis*, 426 S.C. 326, 338, 827 S.E.2d 167, 174 (2019). "[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the . . . agreement in asserting its claims against the non-signatory." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). "When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.*

That is the case here. Although Defendant's briefing of the instant motion attempts to underplay it, Defendant has asserted against Plaintiff a counterclaim for breach of the Prime Contract. The Court has doubts regarding the viability of this counterclaim, given that Plaintiff does not appear to be a party to, or a third-party beneficiary of, the Prime Contract. *See Trancik*

---

[5] The Court applies South Carolina contract law here because the Prime Contract is governed exclusively by South Carolina law. (ECF No. 42-1, p. 66).

*v. USAA Ins. Co.*, 354 S.C. 549, 554, 581 S.E.2d 858, 861 (Ct. App. 2003) (providing that non-parties to a contract are generally not liable under the contract).  However, the counterclaim has nonetheless been made.  It is inescapable that Defendant is attempting to rely on the terms of the Prime Contract in asserting a breach-of-contract counterclaim against Plaintiff.  Defendant may not simultaneously avoid the Prime Contract's burdens.  Consequently, the Court finds that Plaintiff should be allowed to benefit from invocation of the forum-selection clause in the Prime Contract.   The forum-selection clause encompasses Defendant's breach-of-Prime-Contract counterclaim.

Because this counterclaim is covered by a valid forum-selection clause, the section 1404(a) analysis is altered in three ways:  (1) the plaintiff's choice of forum holds no weight and the plaintiff consequently bears the burden of establishing that a transfer pursuant to the forum-selection clause is unwarranted; (2) the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum," and consider only the public-interest factors, which defeat a forum-selection clause only in "unusual cases"; and (3) a transfer will not carry with it the original forum's choice-of-law rules, which could affect public-interest considerations.  *Atl. Marine Const.*, 571 U.S. at 60.  Defendant has presented no private-interest factors that defeat the forum-selection clause.  Accordingly, the Court finds that Defendant's counterclaim for breach of the Prime Contract should be transferred to the District of South Carolina pursuant to 28 U.S.C. § 1404(a) and the Prime Contract's mandatory forum-selection clause.

Defendant's counterclaim for breach of the Subcontract should also be transferred.  Section 1404(a) provides that "a district court may transfer any *civil action* to any other district or division where it might have been brought." (emphasis added).  Hence, section 1404(a) plainly authorizes

only the transfer of an entire lawsuit.[6]  *In re Flight Transp. Corp. Sec. Litig.*, 764 F.2d 515, 516 (8th Cir. 1985) (noting that section 1404(a) "contemplates a plenary transfer"); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991) ("Section 1404(a) only authorizes the transfer of an entire action, not individual claims.").  Because the Court has found that one of Defendant's counterclaims is subject to the Prime Contract's forum-selection clause, it is appropriate to transfer Defendant's other counterclaim, as well.  Accordingly, the Court finds that Defendant's counterclaim for breach of the Subcontract should also be transferred to the District of South Carolina pursuant to 28 U.S.C. § 1404(a) and the Prime Contract's mandatory forum-selection clause.

### 2. Transfer for Convenience and In the Interest of Justice

Plaintiff argues that its claims in this case should also be transferred to the District of South Carolina under section 1404(a) for convenience's sake and in the interest of justice.  Defendant disagrees.

The federal transfer statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  A transfer analysis pursuant to section 1404(a) includes a three-factor balancing test:  "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice."  *Terra*, 119 F.3d at 691.  "District courts are not limited to the factors enumerated in the statute but may consider all relevant factors." *Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*, 431 F. Supp. 2d 955, 966 (S.D. Iowa 2006). The Court enjoys "much discretion" when deciding whether to transfer.  *Terra*, 119 F.3d at 697.

---

[6] In certain "rare circumstances," it may be appropriate for a court to sever specific claims under Federal Rule of Civil Procedure 21 to effectuate their separate transfer.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991).  Defendant has not proposed this course of action, so the Court does not consider it.

Nevertheless, "[c]hange of venue . . . should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982) (per curiam), *overruled on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1311 (8th Cir. 1990). As the movant, Plaintiff bears the "heavy burden" of showing that a section 1404(a) transfer is warranted. *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1137 (D. Minn. 2009).

First, the Court must consider the conveniences of the parties and witnesses. When balancing the conveniences, the Court may consider things such as: (1) the convenience of the parties; (2) the convenience of the witnesses—including the willingness of the witnesses to appear; (3) the accessibility of records and documents; (4) the location where the conduct complained of occurred; and (5) the applicability of each forum state's substantive law. *Terra*, 119 F.3d at 696. Next, the Court must consider the interests of justice, including: (1) the judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflicts of law; and (7) the advantage of having a local court determine questions of local law. *Id.* "The interests of justice factor is often viewed as being a highly, if not the most important, factor." *Blood v. Givaudan Flavors Corp.*, No. C04-0085-MWB, 2009 WL 6316257, at *4 (N.D. Iowa June 8, 2009) (collecting cases).

Upon consideration, the Court concludes that Plaintiff does not carry its "heavy burden" of showing that a section 1404(a) transfer is warranted. *Austin*, 677 F. Supp. 2d at 1137. Plaintiff's only argument for transfer is that similar litigation is pending in the District of South Carolina and consolidating the cases would promote judicial economy and save resources. This is certainly a valid factor for consideration. *See Ahlstrom v. Clarent Corp.*, No. CIV. 02-780-RHKSRN, 2002 WL 31856386, at *6 (D. Minn. Dec. 19, 2002). However, Plaintiff does not raise or discuss any

of the other factors,[7] so the Court finds that the mere possibility that this case could be consolidated with Judge Crain's other cases does not heavily tip the balance and overcome the strong presumption favoring the parties' chosen venue.  *See Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*, 431 F. Supp. 2d 955, 966-67 (S.D. Iowa 2006).  Consequently, after careful review of all relevant factors, the Court determines that Plaintiff's claims will not be transferred.

### III.  CONCLUSION

For the above-stated reasons, the Court finds that Plaintiff's Motion to Transfer (ECF No. 52) should be and hereby is **GRANTED IN PART AND DENIED IN PART**.

Defendant's counterclaims will be transferred pursuant to 28 U.S.C. § 1404(a) and the Prime Contract's mandatory forum-selection clause.  The Clerk of Court is **DIRECTED** to immediately transfer Defendant's counterclaims (ECF No. 47) to the United States District Court for the District of South Carolina for all further proceedings.  Plaintiff's claims will remain with this Court.

**IT IS SO ORDERED**, this 4th day of September, 2020.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[7] In Plaintiff's reply brief, it argues for the first time that a transfer to South Carolina would promote the convenience of witnesses and the accessibility of documents.  Generally, the Court does not consider arguments raised for the first time in a reply brief.  *See* Fed. R. Civ. P. 7(b) (stating that a request for relief, and the particular grounds supporting the request, must be made in a motion); *Akeyo v. O'Hanlon*, 75 F.3d 370, 374 n.2 (8th Cir. 1996); *see also Hanson v. Randall*, No. 4:18-cv-4025-SOH, 2018 WL 1750510, at *4 (W.D. Ark. Apr. 11, 2018) (declining to address newly raised argument in a reply).  However, that aside, these arguments are insufficient.  For Plaintiff's argument regarding the convenience of witnesses, it must, by affidavit or other information, clearly specify the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover.  *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991); *Hylland v. Flaum*, Civ. No. 16-4060, 2016 WL 6901267, at *7 (D.S.D. Nov. 22, 2016)) (citing 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3851 at 425 (4th ed.)).  Plaintiff has not done so, so its convenience-of-witnesses argument holds no weight.  For the argument regarding access to documents, although access to books and records is a factor to be taken into account when determining if transfer is warranted, modern technology allows for easy reproduction, so the "actual physical location of voluminous documents is not a particularly salient factor in a section 1404(a) determination."  *Amazin' Raisins Int'l, Inc. v. Ocean Spray Cranberries, Inc.*, No. CIV.04-3358 ADM/AJB, 2004 WL 2595896, at *3 (D. Minn. Nov. 15, 2004) (internal quotation marks omitted).  In sum, even if the Court considered these belatedly raised factors, they do not tip the scales in favor of transfer.

14